1
2
3
4
5
6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

7

8

9

10

11

12

13

14

15

| | |
|---|---|
| SEAN REYNOLDS, an individual,<br><br>Plaintiff,<br>v.<br>MCLAREN AUTOMOTIVE, INC., a<br>Delaware corporation, et al.,<br><br>Defendants. | Case No.: 3:23-cv-01928-W-MMP<br><br>**ORDER GRANTING IN PART<br>AND DENYING IN PART<br>MOTION TO DISMISS [DOC. 3];<br>GRANTING MAI's REQUEST<br>FOR JUDICIAL NOTICE [DOC. 3-<br>3]; DENYING PLAINTIFF'S<br>MOTION TO REMAND [DOC. 4];<br>AND DENYING PLAINTIFF'S EX<br>PARTE APPLICATION AS MOOT<br>[DOC. 5]** |

16

17

18

19

20

21

22

23

24

25

26

27

28

    Pending before the Court is Defendant McLaren Automotive, Inc.'s ("MAI")

motion to dismiss ([Doc. 3], "MTD") Plaintiff Sean Reynolds's Complaint ([Doc. 1-2],

"Complaint").  In its MTD, MAI requests the court take judicial notice of a "Validated

Registration Card" for the Vehicle from the California Department of Motor Vehicles.

([Doc. 3-3], "RJN" .)  Plaintiff not only opposes the MTD ([Doc. 7], "MTD

Opposition"), but also asks the Court to remand this case back to the San Diego County

Superior Court ([Doc. 4], "Motion to Remand").  Additionally, Plaintiff requests, via an

ex parte application, that the Court decide the Motion to Remand before the MTD.

([Doc. 5], "Ex Parte Application".)  MAI has replied to Plaintiff's MTD Opposition

([Doc. 8], "Reply to MTD Opposition"); opposes the Motion to Remand ([Doc. 9],

"Opposition to Motion to Remand"); and opposes the Ex Parte Application ([Doc. 6],

"Opposition to Ex Parte Application").  In turn, Plaintiff has replied to MAI's Opposition to Motion to Remand.  ([Doc. 10], "Reply to Remand Opposition".)

The Court decides the matter on the papers submitted and without oral argument.  *See* CivLR 7.1(d)(1).  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the MTD, **GRANTS** MAI's RJN, **DENIES** the Motion to Remand, and **DENIES** the Ex Parte Application as moot.

## I.   RELEVANT BACKGROUND

As alleged in the Complaint, Plaintiff purchased a 2020 McLaren 620R (the "Vehicle") on February 16, 2021, via a "Retail Installment Sale Contract." (*Complaint* at ¶ 6.)  According to Plaintiff, the vehicle came with "written warranties and other express and implied warranties" that "the Vehicle and its components would be free from all defects . . . would be fit for the ordinary purposes for which it was intended . . . and that Defendants . . . would perform any repairs, alignments, adjustments, and/or replacements of any parts necessary to ensure that the Vehicle was free from any defects . . . [and] that Defendants . . . would maintain the utility of the Vehicle for three (3) years with no milage limitations and would conform the Vehicle to the applicable express warranties." (*Id.* at ¶ 8.)

While not entirely clear from the Complaint, subsequent briefing clarifies that Plaintiff is alleging he purchased the Vehicle from a dealership in Pennsylvania (who is not a party to this case) for approximately $275,000.000 and that MAI was the Vehicle's "Distributor," but was also involved in the "sale . . . and/or importing" of the Vehicle. (*See id.* at ¶ 2; *MTD* at 9; *MTD Opposition* at 16.)  Eventually, it appears that the Vehicle was delivered to Plaintiff in California—although by who and under what circumstances are unclear.  (*See MTD* at 10; *MTD Opposition* at 16.)  Later, Plaintiff alleges that the Vehicle became "out of service" due to "nonconformities," at which point he began brining the Vehicle to MAI's "authorized service and repair facilities" for maintenance. (*Complaint* at ¶ 10.)  As alleged, "each time Plaintiff delivered the nonconforming Vehicle to Defendants' authorized service and repair facility," they "represented to

Plaintiff they could and would conform the Vehicle to the applicable warranties . . . ." (*Id.* at ¶ 13.)  Despite these representations, the Complaint alleges that MAI "failed to conform the Vehicle to said warranties", and that all the Vehicle's "defects, malfunctions, misadjustments, and/or nonconformities" still "exist even after a reasonable number of attempts to repair was given."  (*Id.* at ¶ 13.)  Eventually, it appears that Plaintiff asked MAI to repurchase the Vehicle.  (*Id.* ¶ 72.)  After initially demanding Plaintiff sign a legal release and agree to never purchase another McLaren vehicle ever again in exchange for MAI repurchasing the Vehicle (the "First Repurchase Offer"), the Complaint alleges that MAI eventually agreed to simply repurchase the Vehicle without receiving a legal release or agreement to never again purchase a McLaren vehicle from Plaintiff.  (*Id.* at ¶¶ 73-74.)

On or about September 13, 2023, Plaintiff filed this civil action in San Diego County Superior Court asserting a total of seven claims for relief against MAI; McLaren Group, LLC; and Does 1-20 (collectively, "Defendants").  ([Doc. 1], "Notice of Removal" at ¶ 1.)  Claims 1 asserts breach of the implied warranty of merchantability under the Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790, *et seq.*, the "Song-Beverly Act"); Claim 2 asserts breach of express warranty under the Song-Beverly Act; Claim 3 asserts a breach of express warranty under California Commercial Code section 2313; Claim 4 asserts violation of 15 U.S.C. § 2301-2312, *et seq.* (the "Magnuson-Moss Act"); Claims 5 asserts violation of California Civil Code section 1750, *et seq.* (the "Consumers Legal Remedies Act" or "CLRA"); Claim 6 asserts violations of California Business and Professions Code section 17200 (the "Unfair Competition Law" or "UCL"); and Claim 7 violation of California Civil Code section 1790.1.  (*Complaint* at ¶¶ 15-83.)

On October 9, 2023, Plaintiff dismissed McLaren Group, LLC with prejudice, apparently after realizing it was a real estate business operated by an individual named Kelly McLaren who has no relation to McLaren vehicles.  (*Notice of Removal* at ¶ 14.)

Then, on October 20, 2023, MAI removed the case to federal court based on diversity jurisdiction.  (*Id.* at ¶ 8.)

On October 26, 2023, MAI moved to dismiss the case, arguing that: (1) Plaintiff lacks statutory standing (under the Song-Beverly Act, the California Commercial Code, and the CLRA) to bring this case because he did not purchase and does not own the Vehicle (*MTD* at 8-9, 12, 13-14); (2) the Vehicle was purchased outside of California, and therefore neither the Song-Beverly Act or California Commercial Code apply (*id*. at 9-10); (3) MAI owes no implied warranties regarding the Vehicle because it is only a distributor, not a manufacturer (*id*. at 11); (4) Plaintiff's Magnuson-Moss Act claims necessarily fail because his underlying state law warranty claims fail (*id*. at 12-13); (5) Plaintiff's UCL claim fails because he has not alleged an "unlawful" business practice (*id*. at 14-15); and (6) Plaintiff's California Civil Code section 1790.1 claim fails because it relies on an underlying Song-Beverly Act violation and the parties never actually entered into the agreement Plaintiff complains of (*id*. at 16-17).  Along with its MTD, MAI asks the Court to take judicial notice of and/or incorporate by reference: (a) a "purchase agreement" purporting to show that the Pennsylvania McLeran dealership actually sold the Vehicle to a Connecticut company called Premier Financial Services, LLC (not to Plaintiff) (*MTD Opposition* at 9-10; [Doc. 3-2] at 3, the "Purchase Agreement"); (b) a "Validated Registration Card" from the California Department of Motor Vehicles purporting to show that the Vehicle, at the time of filing of this case, was not registered to Plaintiff (*RJN* at 2; [Doc 3-4], the "DMV Registration"); and (c) a copy of the Vehicle's express warranty (*MTD Opposition* at 9-10; [Doc. 3-2] at 5-91, the "Warranty").

In turn, Plaintiff both opposes the MTD and moves to remand the case to back to the San Diego County Superior Court because, in Plaintiff's estimation, MAI has not

sufficiently shown that the amount in controversy requirement is met.  (*Motion to Remand* at 5-9.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss for failing "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6) ("Rule 12").  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.  *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983).  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  Additionally, in evaluating the motion, the Court must assume the truth of all factual allegations and must "construe them in light most favorable to the nonmoving party."  *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002).

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2) ("Rule 8").  The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570).  While well-pled allegations in the complaint are assumed true, a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Under Federal Rule of Evidence 201(b), courts may take judicial notice of undisputed, adjudicative facts at the motion to dismiss stage when they: (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be

accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 999 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)). "[P]ublic records" count as "sources whose accuracy cannot be [reasonably] questioned." *Id*. (citing *Lee*, 250 F.3d at 690).  However, whether a source's accuracy "cannot reasonably be questioned," is "only part of the inquiry." *Khoja*, 899 F.3d at 999.  The Court must also assess whether the facts at issue "can be accurately and readily determined" from the source.  *Id*.  Thus, "[i]t is improper to judicially notice a [document] when the substance of the [document] 'is subject to varying interpretations, and there is a reasonable dispute as to what the [document] establishes.'" *Id*. at 1000.

Similarly, "incorporation-by-reference" is a "judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja*, 899 F.3d at 1002.  Documents may be "incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim," *id.*, and "the documents' authenticity . . . is not contested," *Lee*, 250 F.3d at 689.  The purpose behind this doctrine is to "prevent[] plaintiffs from surviving a [motion to dismiss] by deliberately omitting references to documents upon which their clams rest." *Id*. (quoting *Parrino v. FHP, Inc*., 146 F.3d 699, 706 (9th Cir. 1998)).

## III.   DISCUSSION

### A.   Request for Judicial Notice and Incorporation

In its RJN, MAI asks the Court to either take judicial notice of or incorporate-by-reference the Vehicle's DMV Registration.  (*RJN* at 2.)  Additionally, MAI asks directly in its MTD that the Court incorporate-by-reference: (1) a certain "purchase agreement"

purportedly related to the Vehicle's sale; and (2) a copy of the Vehicle's Warranty. (*MTD* at 10; *see* [Doc. 3-2] at 3-92.)

A vehicle's registration card for the California Department of Motor Vehicles qualifies as a "public record" who's "whose accuracy cannot reasonably be questioned." *See Islas v. Ford Motor Co.*, 2019 WL 10855294, at *4 (C.D. Cal. July 29, 2019) ("[The court] likely would also be able to consider the Department of Motor Vehicles Registration by way of judicial notice."); *see also Fimbres v. Chapel Mortgage Corp.*, 2009 WL 4163332, *3 (S.D. Cal. Nov. 20, 2009) (taking judicial notice of a deed of trust, notice of default, notice of trustee's sale, assignment of deed of trust, and substitution of trustee, as each was a public record); *Allshouse v. Caliber Home Loans, Inc.*, 2014 WL 12594210, at *3 (C.D. Cal. Oct. 29, 2014) ("Courts routinely take judicial notice of assignments of deed of trust and similar recorded documents.")

Here, the Vehicle's DMV Registration unequivocally states that, at the time this lawsuit was filed, the Vehicle's "Registered Owner[s]" were a Connecticut company called Premier Financial Services, LLC (as lessor) and a law firm called US Construction Law, APC (as lessee).  This notion is confirmed by Plaintiff's *MTD Opposition*, wherein Plaintiff not only fails to actually contest the accuracy of the Vehicle's DMV Registration, but seemingly concedes its authenticity and that it was not Plaintiff but his law firm (US Construction Law, APC) to whom the Vehicle was registered.  (*MTD Opposition* at 16 ["US Construction Law, APC is listed as a registered owner on the California registration card in Exhibit A to MAI' s Request for Judicial Notice. . . . The California registration confirms the car's physical presence in California . . . ."]; [Doc. 7-2], at ¶ 13 ["US Construction Law, APC is listed as a registered owner on the California registration card, but I own the subject vehicle . . . ."].)

Additionally, even if the Vehicle's DMV Registration was not the proper subject of judicial notice, the Court could still consider it here under the incorporation-by-reference doctrine.  Indeed, the Vehicle's DMV Registration forms the basis of Plaintiff's claims, in that they necessarily rely on Plaintiff personally being the owner of the Vehicle.  (*E.g.*,

*Complaint* at ¶¶ 6 ["On February 16, 2021, Plaintiff purchased a 2020 McLaren 620R . . . ."]; 53 ["Plaintiff is entitled to rescission of the contract and reimbursement of the purchase price paid for the vehicle."]; 64 ["The purported repurchase offer did not comply with Song-Beverly for numerous ways, including but not limited to the refusal of Defendant to refund Plaintiff's registration . . . ."]; 80 ["Plaintiff purchased the Vehicle on February 16, 2021"].) And since, as discussed above, Plaintiff does not actually contest the accuracy of the Vehicle's DMV Registration, the Court will also consider it incorporated-by-reference.

Similarly, the Complaint necessarily relies on (and extensively references) the Purchase Agreement and the Vehicle Warranty. (*E.g., Complaint* at ¶¶ 6 ["Plaintiff purchased a 2020 McLaren 620R . . . . The Retail Installment Sale Contract ('Contract') is in the possession of [MAI]"]; 8-9 ["Plaintiff received written warranties . . . . Plaintiff has duly performed all the conditions on Plaintiff's part under the Contract and under the express and implied warranties"]; 13 ["[MAI] or their representatives failed to conform the Vehicle to the applicable warranties"]; 31 ["The actions taken by [MAI] . . . were insufficient to make the Vehicle conform to the express warranties . . . ."].) However, Plaintiff does attach to his MTD Opposition a document that is very similar, but not identical to, the Purchase Agreement—which in turn purports to be the true purchase agreement. ([Doc. 7-4] at 2.) The Court will interpret this as Plaintiff contesting the authenticity of the Purchase Agreement.[1] Accordingly, the Court will not treat the Purchase Agreement as incorporated-by-reference.

However, unlike the Purchase Agreement, Plaintiff never actually contests the authenticity of the Vehicle's Warranty in his opposition. (*See MTD Opposition* at 15.) Instead, Plaintiff simply asserts that "[t]he Court may not take judicial notice of such documents as they are not the type of recorded or government documents of which such

---

[1] The Court also notes that neither the document contains signatures.

1  notice is available as a matter of law." (*Id.*)  Not only does this argument address the

2  wrong doctrine under which MAI seeks the Court's review of the Vehicle Warranty

3  (judicial notice instead of incorporation-by-reference), it also fails to actually raise any

4  contentions regarding the Warranty's authenticity or assert that attached Warranty is not

5  the Vehicle's real warranty.  Absent any actual dispute regarding the Warranty's

6  authenticity, the Court considers the Warranty incorporated-by-reference.  Plaintiff

7  cannot base large swaths of the Complaint on MAI's alleged failure to uphold the

8  Vehicle's express warranties and thereafter object when MAI seeks to have the Court

9  consider the actual Warranty.

10       Accordingly, the Court grants Plaintiff's request and takes judicial notice of the

11  Vehicle's DMV Registration and incorporates-by-reference the Vehicle's Warranty.

12  **B.**   **Federal Rule of Civil Procedure 11 and California Code of Civil**

13       **Procedure Section 128.7(b)**

14       As a preliminary matter, the Court finds it particularly relevant in this case

15  to begin by laying out the rules governing representations made to the Court by

16  counsel, as it will frame much of the following analysis.

17       Federal Rule of Civil Procedure 11 ("Rule 11") makes an attorney's

18  signature on every pleading, written motion, or other paper filed with a court a

19  certification that said attorney has conducted a "inquiry reasonable under the

20  circumstances" and thereby determined that "the factual contentions [in the filing]

21  have evidentiary support or . . . will likely have evidentiary support".  FED. R. CIV.

22  P. 11(b).  While Rule 11 does not apply to state court complaints that are removed

23  to federal court (in that the state court complaint was not "present[ed]" to the

24  federal court by the signing attorney), removed state court complaints remain

25  subject to state sanctions rules .  *Tompkins v. Cyr*, 202 F.3d 770, 787 (5th Cir.

26  2000) (applying state sanctions rule to state court complaint removed to federal

27  court because "[i]f the state pleading rules did not apply, then nothing would

28  govern the original pleadings"); *Griffen v. City of Oklahoma City*, 3 F.3d 336, 341

(10th Cir.1993) (same).  Much like Rule 11, the California Code of Civil Procedure makes an attorney's signature on every court filings a certification that, after "a inquiry reasonable under the circumstances," the signing attorney has determined that "[t]he allegations and other factual contentions [in the filings] have evidentiary support or . . . are likely to have evidentiary support."  Cal. Code Civ. Proc. § 128.7(b).

### C.   **Motion to Remand**

Plaintiff moves to remand this case back to state court, arguing that MAI has not met its burden of demonstrating that the amount in controversy "likely" exceeds $75,000.  (*Motion to Remand* at 7-9.)  When calculating the amount in controversy, courts must consider "the 'amount at stake in the underlying litigation.'"  *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (quoting *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417-18 (9th Cir. 2018)).

Here, the Court finds it difficult to square Plaintiff's assertions in his Motion to Remand (regarding the amount in controversy supposedly not being met) with the assertions in his Complaint that "Plaintiff has suffered damages due to Defendant's acts or omissions in the amount of at least $294,189.00 . . . ." (*Complaint* at ¶ 66.)  Among other things, these contradictory assertions begin to raise serious questions regarding what, if any, reasonable inquiry Plaintiff's attorney, David N. Barry (SBN 219230), engaged in before signing the Complaint and the Motion to Remand.

Given that the Complaint is explicitly seeking: (i) "at least $294,189.00" in actual damages; (ii) "a Civil Penalty . . . [of up to] two times Plaintiff's actual damages" under the Song-Beverly Act; and (iii) "attorney's fees" under the Song-Beverly Act—the Court is more than satisfied that the amount in controversy in this case well exceeds the required $75,000 and **DENIES** the Motion to Remand.

(*Id.* at ¶¶ 32, 35, 66.)  *See generally Epperson v. Gen. Motors, LLC*, 2023 WL 8234646, at *5 (S.D. Cal. Nov. 28, 2023) (Whelan, J.).

**D.    Motion to Dismiss**

**1.    Song-Beverly Act Claims (Claims 1 and 2)**

MAI moves to dismiss Claims 1 and 2 (for breach of implied and express warranty under the Song-Beverly Act) on the grounds that: (a) Plaintiff's law firm is the real owner of the Vehicle and thus Plaintiff lacks statutory standing to bring a Song-Beverly Act claim; (b) the Song-Beverly Act only applies to vehicles sold in California and the Vehicle was sold outside of California; and (c) the Song-Beverly Act does not apply to "distributors" like MAI.  (*MTD* at 8-11.)

**a)    Who May Bring Song-Beverly Act Claims**

It is the Plaintiff's burden to plead that the Song-Beverly Act applies to his claims.  *Dagher v. Ford Motor Co*., 238 Cal. App. 4th 905, 917 (2015) (citing *Park City Servs., Inc. v. Ford Motor Co.*, 144 Cal. App. 4th 295, 309 (2006)).

There are two types of plaintiffs who have statutory standing to bring Song-Beverly Act claims: (1) an individual whose new motor vehicle is "bought or used primarily for personal, family, or household purposes"; and (2) an individual or legal entity who has "not more than five motor vehicles . . . registered in this state" and whose new motor vehicle is bought or used primarily for business purposes with a gross weight "under 10,000 pounds."  *Park City Servs., Inc*, 144 Cal. App. 4th at 305-06; *Dagher*, 238 Cal. App. 4th at 920.

Here, Plaintiff alleges that he purchased the Vehicle "for personal, family, and/or household purposes."  (*Complaint* at ¶ 6.)  Yet, as explained above, the Vehicle is registered to Plaintiff's law firm, US Construction Law, APC, and Plaintiff does not allege that the vehicle was bought or is used "primarily for business purposes"; or that US Construction Law, APC has less than five motor vehicles under 10,000 pounds registered in this state.  Thus, it would seem that

Plaintiff has not sufficiently plead facts showing that the Song-Beverly Act applies to his claims.

Plaintiff attempts to overcome this by arguing that, despite what the Vehicle's DMV Registration says about who owns the Vehicle, "Plaintiff bought and paid for the subject vehicle himself" and that Plaintiff uses the Vehicle "primarily for personal, household, and family purposes." (*MTD Opposition* at 16.)

This is not the first time the Court has dealt with an attorney in a Song-Beverly Act case claiming that a vehicle registered to his law firm was really used for his own "personal purposes." In *L. Firm of King Aminpour v. Rolls-Royce Motor Cars NA, LLC*, a law firm brought a Song-Beverly Act claim against the manufacturer of an allegedly defective 2014 Rolls-Royce Phantom. 401 F. Supp. 3d 1060, 1062 (S.D. Cal. 2019) (Whelan, J.). In an attempt to overcome the fact that the firm had failed to allege it had "not more than five motor vehicles . . . registered in this state," the firm's owner argued that—despite being registered to his law firm—the subject vehicle was really used for his "own personal purposes" and that the "five motor vehicle" limit applied only to vehicles used primarily for "business purposes," not to vehicles used primarily for "personal purposes." *Id.* at 1066-67. In rejecting this argument, the Court explained that when a vehicle is registered to a legal entity, a Song-Beverly Act claim can only be asserted if the subject vehicle is used primarily for "business purposes" and the business has less than five motor vehicles registered to it in California. *Id.* at 1067-68. Otherwise, a legal entity could circumvent the Song-Beverly Act's the five-vehicle limit by simply claiming that the subject vehicle was being used "personal purposes." *Id.* ("[T]he Law Firm's theory contradicts the statute's five-vehicle limit because it would afford protection to a corporation with 25 'new motor vehicles,' as long as only five were 'designated' for business purposes, and the remaining 20 were 'designated' as personal use vehicles. This interpretation is contrary to the

1    Legislative intent of providing coverage to businesses with five or fewer vehicles
2    because such businesses do not have sufficient market power.").

3         For similar reasons, it is of no avail to Plaintiff that he claims to be the true
4    owner of the Vehicle despite it being registered to US Construction Law, APC.
5    The statute is explicit that a legal entity may only bring a Song-Beverly Act claim
6    when it has "not more than five motor vehicles *registered* in this state" and the
7    subject vehicle is "bought or used primarily for business purposes."  Cal. Civ.
8    Code § 1793.22(e)(2) (emphasis added).  To allow a business owner to bring a
9    Song-Beverly Act claim over a vehicle registered to his business would undermine
10   the legislative intent of the Song-Beverly Act by allowing the business to
11   circumvent the five-vehicle registration limit.  Since the Vehicle is registered to US
12   Construction Law, APC, only it has statutory standing to bring Song-Beverly Act
13   claim regarding the Vehicle—and even then, only if it has no more than five
14   vehicles registered to it in California and the Vehicle is used primarily for business
15   purposes.

### b)      Where Was The Vehicle Sold

17        Additionally, MAI argues that Claims 1 and 2 must be dismissed because the
18   Song-Beverly Act only applies to vehicles sold in California and the Vehicle was
19   sold outside of California.  (*MTD* at 9.)

20        MAI is correct that the Song-Beverly Act only applies to vehicles sold in
21   California.  *Cummins, Inc. v. Superior Ct.*, 36 Cal. 4th 478, 487 (2005) ("[The
22   Song-Beverly Act] is most reasonably interpreted as applicable only to vehicles
23   sold in California.").  The Song-Beverly Act defines a "sale" as "the passing of
24   title from the seller to the buyer for a price."  Cal. Civ. Code. § 1791(n).  Under the
25   California Commercial Code, "(a) [i]f the contract requires or authorizes the seller
26   to send the goods to the buyer but does not require him to deliver them at
27   destination, title passes to the buyer at the time and place of shipment," but "(b) [i]f
28   the contract requires delivery at destination, title passes on tender there."  Cal.

Com. Code § 2401(2).  Accordingly, the issue here is whether the Vehicle's sales contract was a "shipment contract" (in which case the Vehicle was likely "sold" at the dealership in Pennsylvania) or was a "delivery contract" (in which case the Vehicle was arguably "sold" when delivered in California).  *See* G*alicia v. Country Coach, Inc*., 324 F. App'x 687, 689 (9th Cir. 2009) (*quoting* Cal. Com. Code § 2401(2)) ("[u]nless otherwise explicitly agreed[,] title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods . . . even though a document of title is to be delivered at a different time or place."); *Gusse v. Damon Corp*., 470 F. Supp. 2d 1110, 1113 (C.D. Cal. 2007) (holding that a contract was a "shipment contract," and therefore the vehicle was "sold" at a dealership in California, even though the dealer drove the vehicle into Arizona, because the contract did not explicitly require delivery in Arizona); *Aquair Ventures, LLC v. Gulf Stream Coach, Inc.*, 2009 WL 150963, at *3-4 (N.D. Cal. Jan. 21, 2009) (holding that an RV was "sold" in California, despite the buyer taking physical possession of the RV in Nevada, because the contract was entered into in California and did not explicitly require delivery in Nevada).

Ultimately, the Court cannot yet conclude whether the contract for the Vehicle's sale was a "shipment contract" or a "delivery contract."  While the "Purchase Agreement" MAI attached to its MTD does not explicitly state that the Vehicle was required to be delivered in California, the Court (for reasons previously explained) cannot properly consider the unsigned Purchase Agreement at this stage of the litigation.  Determining where the Vehicle was sold is a task more properly left for a point later in this case.

## c)   <u>Who Sold The Vehicle</u>

MAI also argues that Claim 1 (breach of implied warranty) fails because the Song-Beverly Act only applies to "manufacturers" and "retail sellers," while the Complaint alleges that MAI was only a "Distributor."  (*MTD* at 11.)  While this

may or may not be true (MAI does not provide the Court with much authority nor any caselaw on this point), the Court simply notes that despite "tagging" MAI as "Distributor" in the Complaint, Plaintiff has also alleged that MAI was/is involved in the "sale, distribution, and/or importing" of vehicles. (*Complaint* at ¶ 2.) Accepting that allegation as true, which the Court must at this stage, is sufficient to plausibly state that MAI was "manufacturer" and/or "retail seller" of the Vehicle—regardless of the name Plaintiff used to "tag" MAI throughout the Complaint.

However, as discussed above, Plaintiff does not have statutory standing to bring Song-Beverly Act claims. Accordingly, Claims 1 and 2 must be dismissed in their entirety.

## 2. <u>California Commercial Code Claim (Claim 3)</u>

Next, MAI argues that Claim 3—breach of express warranty under California Commercial Code Section 2313—must be dismissed because the statute only applies to a "buyer" and Plaintiff was not the Vehicle's "buyer." (*MTD* at 12.)

California Commercial Code section 2103(1)(a) defines "buyer" as "a person who buys or contracts to buy goods." MAI points to the "Purchase Agreement" attached to the MTD as evidence that a Connecticut Company, Premier Financial Services, LLC, is the one who bought or contracted to buy the Vehicle. (*Id.*; *Purchase Agreement.*) While this may ultimately prove true, the Court cannot properly consider the Purchase Agreement at this time (as explained above). Meanwhile, the Complaint does allege that "Plaintiff purchased [the Vehicle]." (*Complaint* at ¶ 6.) Furthermore, Plaintiff (and his counsel) represent in the MTD Opposition that Plaintiff is the one who "purchase[d]" the Vehicle in California. (*MTD Opposition* at 16-17.) For now, the Court will accept Plaintiff's

factual contentions at face value and assume that they were formed after a "inquiry reasonable under the circumstances." [2]  *See* Fed. R. Civ. P. 11(b).

Accordingly, Claim 3 remains in its entirety.

### 3.   Magnuson-Moss Act Claim (Claim 4)

With respect to Claim 4, the Complaints seeks damages for MAI's alleged breach of its express and implied warranties pursuant to 15 U.S.C. § 2310(d). (*Complaint* at ¶¶ 53-55.)

Indeed, 15 U.S.C. § 2310(d) permits suit in federal court by a person claiming to have been "damaged by a failure . . . to comply with any obligation under [the Magnuson-Moss Act], *or* under a written warranty, implied warranty, or service contract."  (Emphasis added).  Thus, an aggrieved customer may sue either for breach of the federal-law standards created by the Act or may borrow state law express and implied warranty causes of action.  15 U.S.C. § 2310(d); *see Clemens v. DaimlerChrysler Corp*., 534 F.3d 1017, 1022 n.2 (9th Cir. 2008) ("Clemens alleges a violation of the Act only insofar as DaimlerChrysler may have breached its warranties under state law; there is no allegation that DaimlerChrysler otherwise failed to comply with the Magnuson–Moss Act. Therefore, the federal claims hinge on the state law warranty claims.").  With respect to the federal "standards," the Magnuson-Moss Act defines two categories of warranties: full warranties and limited warranties.  15 U.S.C. § 2303(a).  For "full warranties," the Magnuson-Moss Act imposes a minimum federal standard and creates remedies and damages for their breach.  15 U.S.C. § 2303(a)(1); 15 U.S.C. § 2304  Whereas "limited warranties" are simply warranties that do not meet the "Federal minimum

---

[2] Unlike the Song-Beverly Act—the application of which turns on DMV registration when the subject vehicle is registered to a legal entity—the California Commercial applies generally to "buyer[s]"—who are defined in terms of "contract[ing] to buy goods," not DMV registration. *See* Cal. Comm. Code § 2103(1)(a).

standard" and must be "conspicuously" labeled as "limited warrant[ies]."  15 U.S.C. § 2303(a)(2).

At first glance, this framework seems to create three separate avenues for Magnuson-Moss Act claims: (1) violations of the federal "full warranty" minimum standards; (2) violations of "limited warranties" as defined by the Act; and (3) violations of state warranty law.  However, since the Magnuson-Moss Act is silent on the damages available for violations of what it defines as "limited warranties"—beyond stating than nothing in the Act "shall invalidate or restrict any right or remedy of any consumer under State law"—courts typically resort to state warranty law for the measure of damages, thus collapsing the analysis for "limited warranty" violations under the Act with state law warranty violations.  15 U.S.C. § 2304 (remedies set forth only apply to warranties that fail to meet the "Federal minimum standards"—i.e., "full warranties"—not to "limited warranties"); *see Schimmer v. Jaguar Cars, Inc*., 384 F.3d 402, 405 (7th Cir. 2004) ("[A]s pled in the complaint, the [vehicle's] warranty is a 'limited' one not subject to § 2304 and thus not subject to the Act's substantive remedies."); *MacKenzie v. Chrysler Corp*., 607 F.2d 1162, 1166 & n.7 (5th Cir. 1979) (resorting to state warranty law to determine the applicable measure of damages for violation of "limited warranties" under the Magnuson-Moss Act).

Here, the Complaint does not allege that the Vehicle's Warranty was a "full warranty" that failed to meet the federal minimum standard.  (*Complaint* at ¶¶ 44-55.)  In fact, the Warranty MAI attached to its MTD and which the Court treats as incorporated-by-reference explicitly states numerous times that it is a "limited warranty."  (*Warranty* at 9-20.)  Instead, the Complaint merely alleges violations of state express and implied warranty law.  (*Complaint* at ¶ 49 ["In breaching the express written warranties and implied warranties by failing to repair the defects and nonconformities, or to replace or repurchase the vehicle, Defendants have violated the Magnuson-Moss Act."].)  In such cases, the Magnuson-Moss Act

claims are duplicative of and "stand or fall with" the express and implied state law warranty claims. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d at 1022 (9th Cir. 2008).

As detailed above, the Complaint's breach of express and implied warranty claims under the Song-Beverly Act (Claims 1 and 2) fail and therefore cannot serve as the foundation for a Magnuson-Moss Act claim. However, the Complaint's breach of express warranty under the California Commercial Code (Claim 3) remains and thus the Magnuson-Moss Act claim (Claim 4) remains, insofar as it alleges violations of the Vehicle's express Warranty under the California Commercial Code.

### 4.   CLRA Claim (Claim 5)

In Claim 5, Plaintiff argues that MAI engaged in "unfair or deceptive" practices under the CLRA by: (1) "misrepresenting the Vehicle as being free from defects"; and (2) by making the First Repurchase Offer, which contained terms that "did not comply with Song-Beverly [Act's]" repurchase provisions. (*Complaint* at ¶¶ 56-70.) MAI moves to dismiss this claim by arguing that the CLRA only applied to "individual" "consumers" and that the Vehicle is owned by Plaintiff's law firm, which is not an "individual" "consumer." (MTD at 13-14.)

First, it is true that the CLRA only applies to "consumers" and the CLRA defines "consumer" as "an individual." Cal. Civ. Code. §§ 1761, 1780; *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003) ("[T]he CLRA does not apply to commercial or government contracts, or to contracts formed by nonprofit organizations and other non-commercial groups."). Thus, if it the Vehicle was actually purchased by Plaintiff's law firm instead of Plaintiff, then a CLRA claim would not lie.

Here however, Plaintiff does allege (and continues to represent in the MTD Opposition) that it was Plaintiff, not his law firm, that purchased the Vehicle. (*Complaint* at ¶ 6; *MTD Opposition* at 16-17.) As with Plaintiff's California

Commercial Code claim, statutory standing under the CLRA does not seem to necessarily turn on the issue of vehicle registration and thus the Court will, for the time being, accept Plaintiff's factual contentions at face value and assume that they were formed after a "inquiry reasonable under the circumstances."  *See* FED. R. CIV. P. 11(b).

Second, to the extent that Plaintiff's CLRA claim is based on MAI's First Repurchase Offer supposedly containing terms different from the Song-Beverly Act's repurchase provisions, the Court makes two observations:  (1) Plaintiff does not have statutory standing to bring a Song-Beverly Act claim (as explained above); and (2) Plaintiff has not provided the Court with any authority showing that he can bring a CLRA claim over a proposed offer that he rejected.  (*See Complaint* at ¶ 74 ["When Plaintiff refused Defendant's cash offer . . . Defendant begrudgingly approved Plaintiff's repurchase request."].)

Accordingly, Claim 5 must be dismissed to the extent that it alleges a CLRA violation based on the First Repurchase Offer containing terms different from the Song-Beverly Act's repurchase provisions.  However, Claim 5 remains to the extent that it relies on allegations regarding MAI's supposed misrepresentations about the Vehicle "being free from defects."

### 5.   **UCL Claim (Claim 6)**

Under the UCL, a business practice is deemed "unfair competition" (and thus prohibited) if it constitutes either: (1) an unlawful business practice; (2) an unfair business practice; or (3) a fraudulent business practice.  Cal. Bus. & Prof. Code § 17200.

Here, Plaintiff alleges MAI violated the UCL's "unlawful" prong by presenting Plaintiff with the First Repurchase Offer—which contained terms different than the repurchase provisions of the Song-Beverly Act.  (*Complaint* at ¶ 73 ["Defendants initially offered Plaintiff's cash in exchange for the execution of an unprovided release. Thus, despite having knowledge that the vehicle qualified

under Song-Beverly, Defendant attempted to have Plaintiff accept cash in willful violation of their obligations under Song-Beverly. "].)  However, Plaintiff has not alleged a violation of the UCL's "fraudulent" prong in that the Complaint does not state any fraud allegations with particularity.  *See Martinez v. Ford Motor Co*., 2022 WL 14118926, at *4 (S.D. Cal. Oct. 24, 2022) (*citing Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)) ("Plaintiff does not sufficiently plead the fraudulent prong because he fails to 'state with particularity the circumstances constituting fraud or mistake.'").  Nor has he stated a UCL claim under the "unfair" prong, in that the Complaint does not allege that MAI's actions: (1) caused substantial consumer injury, (2) were not outweighed by a countervailing benefit to consumers or to completions, and (3) that consumers could not have reasonably avoided the injury.  *Id* (*citing Daugherty v. Am. Honda Motor Co*., 51 Cal. Rptr. 3d 118, 129 (Cal. Ct. App. 2006) and *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig*., 758 F. Supp. 2d 1077, 1091 (S.D. Cal. 2010)).

As explained above, Plaintiff lacks statutory standing to bring Song-Beverly Act claims and thus the Song-Beverly Act cannot serve as a basis for an "unlawful" prong UCL claim.  *Id*. (*quoting Portelli v. WWS Acquisition, LLC*, 2018 WL 9539773, at *4 (S.D. Cal. July 6, 2018) and *Krantz v. BT Visual Images*, 107 Cal. Rptr. 2d 209, 219 (Cal. Ct. App. 2001)) ("Finally, Plaintiff fails to plead the unlawful prong of the UCL because—as discussed in the preceding section—he fails to adequately plead a violation of the Song-Beverly Act. 'A UCL claim "stands or falls depending on the fate of antecedent substantive causes of action."'").  Additionally, Plaintiff has not provided the Court with any authority showing that he may assert a UCL claim over a proposed offer that he rejected.

(*See Complaint* at ¶ 74 ["When Plaintiff refused Defendant's cash offer . . . Defendant begrudgingly approved Plaintiff's repurchase request."].)

Accordingly, Claims 6 must be dismissed in its entirety.

### 6.    California Civil Code Section 1790.1 (Claim 7)

Section 1790.1 of the California Civil Code (part of the Song-Beverly Act) states that, "[a]ny waiver by the buyer of consumer goods of the provisions of this chapter, except as expressly provided in this chapter, shall be deemed contrary to public policy and shall be unenforceable and void." From here, Plaintiff alleges that MAI violated section 1790.1 by trying to get him to enter into the First Repurchase Offer, which Plaintiff asserts was for terms that differed from the repurchase provisions of the Song-Beverly Act. (*Complaint* at 79-83.)

Once again, Plaintiff does not have statutory standing to assert a claim under the Song-Beverly Act and points to no authority showing that a claim for damages may brough under Section 1790.1—especially with regards to a proposed offer that Plaintiff never actually entered into.

Accordingly, Claim 7 must be dismissed in its entirety.

### E.    Leave To Amend

In its MTD Opposition, Plaintiff asks the Court for leave to amend the Complaint if the MTD is granted. (*MTD Opposition* at 30.) Under Federal Rule of Civil Procedure 15(a)(2), courts "should freely give leave [to amend] when justice so requires." Furthermore, leave to amend "should be granted with 'extreme liberty'" and only be denied when "it is clear . . . that the complaint could not be saved by any amendment." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009).

Here, amendment would be futile with respect to Plaintiff's Song-Beverly Act claims (Claims 1 and 2) and claims derivative of alleged Song-Beverly Act violations (Claims 4 and 5—to the extent that they rely on an underlying Song-Beverly Act violations—and Claims 6 and 7 in their entirety) because Plaintiff cannot change that the Vehicle was registered to his law firm instead of Plaintiff,

thus depriving him of statutory standing under the Song-Beverly Act.  As such, these claims are dismissed with prejudice and without leave to amend with respect to Plaintiff Sean P. Reynolds.  However, nothing in this Order precludes a party other than Sean P. Reynolds from bring these claims about the Vehicle in a separate lawsuit.

In summary, this Order holds (with respect to the MTD) that:

- Claims 1 and 2 (for violation of the Vehicle's implied and express warranties under the Song-Beverly Act) are dismissed without leave to amend.

- Claim 3 (for violation of the Vehicle's express warranty under the California Commercial Code) remains in its entirety.

- Claim 4 (Magnuson-Moss Act claim relying on underlying Song-Beverly Act and California Commercial Code violations) is dismissed without leave to amend to the extent that it relies on underlying Song-Beverly Act violations, but remains to the extent that it alleges a violation of the Vehicle's express warranty under the California Commercial Code.

- Claim 5 (CLRA claim) is dismissed without leave to amend to the extent that it relies on the First Repurchase Offer containing terms different than the Song-Beverly Act's repurchase provisions, but remains to the extent that it alleges MAI "misrepresented" the vehicle as being free from defects.

- Claim 6 (UCL claim regarding the First Repurchase Offer containing terms different than the Song-Beverly Act's repurchase provisions) is dismissed without leave to amend.

- Claim 7 (Section 1790.1 claim regarding the First Repurchase Offer containing terms different than the Song-Beverly Act's repurchase provisions) is dismissed without leave to amend.

3:23-cv-01928-W-MMP

### F.      **Plaintiff's Ex Parte Application**

When MAI filed its MTD, the hearing date was set for December 11, 2023. (*MTD* at 1.)  Meanwhile, when Plaintiff filed his Motion to Remand, the hearing date was set on December 11, 2023.  (*Motion to Remand* at 1.)  Thereafter, Plaintiff filed an Ex Parte Application, asking the Court to rule on his Motion to Remand "before" ruling on MAI's MTD, arguing that it would be improper for the Court to rule on the MTD before potentially granting the Motion to Remand .  (*Ex Parte Application* at 2.)  The Court chose to rule on both the Motion to Remand and the MTD together in this Order and has denied the Motion to Remand—thus rendering the Ex Parte Application moot.  *See generally Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (citations omitted) ("It is well established that '[d]istrict courts have inherent power to control their docket.'").

However, the behavior of Plaintiff and his counsel in seeking the Ex Parte Application has unfortunately necessitated a few additional lines from the Court. The Southern District of California's local rules states that an ex parte application must be accompanied by:

> "[An] affidavit or declaration (1) that within a reasonable time before the motion the party informed the opposing party or the opposing party's attorney when and where the motion would be made; or (2) that the party in good faith attempted to inform the opposing party and the opposing party's attorney but was unable to do so, specifying the efforts made to inform them; or (3) that for reasons specified the party should not be required to inform the opposing party or the opposing party's attorney."

CivLR 83.3(g)(2); *c.f.* Judge Whelan's Chambers Civil Rule 5 ("Before filing an ex parte application, counsel shall make every attempt to contact the opposing party to meet and confer regarding the subject of the ex parte application. All ex

3:23-cv-01928-W-MMP

1  parte applications shall be accompanied by a declaration from counsel

2  documenting (1) efforts to contact opposing counsel . . . .").

3       Here, Plaintiff's counsel, David N. Barry (SBN 219230) purported to

4  comply with the first prong of CivLR 83.3(g)(2) by attaching a declaration to the

5  Ex Parte Application, in which he stated that "Defendant was notified of Plaintiffs

6  ex parte on November 9, 2023 at 10:00 a.m. by email to Lisa M. Gibson, Esq.

7  (lisa.gibson@nelsonmullins.com) thereby given [sic] reasonable notice pursuant to

8  Local Rules." ([Doc. 5-1] at ¶ 9.)  However, Plaintiff (who is also an attorney,

9  SBN 249649) then proceeded to file the Ex Parte Application just one minute after

10  emailing MAI's counsel, at 10:01 a.m.  (*Ex Parte Application Filing Receipt*; *see*

11  *Opposition to Ex Parte Application* at 3-4.)

12       Obviously, giving an opposing party one minute of "notice" is not a

13  "reasonable" amount of time.  *See* CivLR 83.3(g)(2).  Nor is it making "every

14  attempt to contact the opposing party to meet and confer . . . ."  *See* Judge

15  Whelan's Chambers Civil Rule 5.  The Court is disappointed that it apparently has

16  to spell this out for Plaintiff and his counsel.  Going forward, Plaintiff and his

17  counsel would do well to avoid similar conduct.

18  **IV.**  **CONCLUSION & ORDER**

19       For the foregoing reasons, the Court **GRANTS** the RJN [Doc. 3-3] and **GRANTS**

20  **IN PART** and **DENIES IN PART** the MTD [Doc. 3].  Claims 1-2 and 6-7 are

21  **DISMISSED WITHOUT LEAVE TO AMEND**.  Claim 4 is **DISMISSED**

22  **WITHOUT LEAVE TO AMEND** insofar as it relies on underlying Song-Beverly Act

23  violations, but remains to the extent that it alleges a violation of the Vehicle's express

24  warranty under the California Commercial Code.  Claim 5 is **DISMISSED WITHOUT**

25  **LEAVE TO AMEND** insofar as it alleges the First Repurchase Offer contained terms

26  different than the Song-Beverly Act's repurchase provisions, but remains to the extent

27

28

that it alleges MAI "misrepresented" the vehicle as being free from defects.  Claim 3 remains in its entirety.

**IT IS FURTHER ORDERED THAT**, the Motion to Remand [Doc. 4] is **DENIED** on the merits and the Ex Parte Application [Doc. 5] is **DENIED** as moot.


**IT IS SO ORDERED.**

Dated:  May 6, 2024

Hon. Thomas J. Whelan
United States District Judge

3:23-cv-01928-W-MMP